<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware Corporation, | |
| Plaintiff, | No. 24cv5633 (EP) (MAH) |
| v. | OPINION |
| VNS HOTELS, INC., a California Corporation; and PETER KHATRI, an individual, | |
| Defendants. | |

**PADIN, District Judge.**

Plaintiff Days Inns Worldwide, Inc. ("Plaintiff" or "DIW"), a hotel franchisor, alleges that Defendants VNS Hotels, Inc. ("VNS") and Peter Khatri breached franchise agreements and related guaranty agreements. D.E. 1 ("Complaint" or "Compl."). Defendants have not appeared. Plaintiff now moves for default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). D.E. 21 ("Motion" or "Mot."). The Motion is decided without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court will **GRANT** DIW's Motion.

I.  BACKGROUND[1]

A.  Factual Background[2]

On December 26, 2006, DIW entered into a license agreement (the "License Agreement")[3] with VNS for the operation of a 40-room Days Inn guest lodging facility located at 24400 Mission Boulevard, Hayward, California 94544 (the "Facility").  License Agreement at 7.  On December 28, 2015, DIW and VNS entered into a SynXis Subscription Agreement (the "SynXis Agreement"),[4] which governed VNS's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to the same.  SynXis Agreement at 59.

Under the License Agreement, VNS was required to operate a Days Inn guest lodging facility for a fifteen-year term.  License Agreement at 15.  In operating the Facility, VNS was required to make periodic payments to DIW for royalties, system assessments, taxes, interest, SynXis Fees, and other fees, (collectively, "Recurring Fees");[5] prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross revenue earned at the Facility;[6] maintain accurate financial information relating to the gross revenue of the Facility;[7] and allow DIW to examine, audit, and make copies of said financial information.[8]  Interest was to be paid "on any past due amount payable to [DIW] … at the rate of 1.5% per month … accruing from the

---

[1] For ease of reference, the Court uses the page ID numbers generated by the Court's CM/ECF system.
[2] "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).
[3] D.E. 21-4, Affidavit of Kendra Mallet ("Mallet Aff."), Ex. A.
[4] Mallet Aff., Ex. B.
[5] License Agreement at 16, 29, 45-47; SynXis Agreement at 61-62.
[6] License Agreement at 10.
[7] License Agreement at 10-11.
[8] License Agreement at 10-11.

due date until the amount is paid." License Agreement at 16. The License Agreement also provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement." *Id.* at 26.

Khatri guaranteed VNS' obligations under the License Agreement to DIW. Mallet Aff., Ex. C (the "Guaranty"). Under the terms of the Guaranty, Khatri agreed, among other things, to "immediately make each payment and perform or cause [VNS] to perform, each unpaid or unperformed obligation of [VNS] under the [License] Agreement." *Id.* In addition, Khatri agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the License Agreement. *Id.*

Although it is unclear to the Court exactly when VNS first breached the Agreement,[9] VNS failed to pay various Recurring Fees to DIW around July 2019, in breach of its obligations under the License Agreement. Mallet Aff. ¶ 15; *see* Itemized Statement at 106-113. By letter dated July 16, 2021, DIW advised VNS that (a) it was in breach of the License Agreement because it owed DIW approximately $145,328.75 in outstanding Recurring Fees, (b) it had thirty (30) days within which to cure this monetary default, and (c) if the default was not cured, then the License Agreement might be subject to termination. Mallet Aff., Ex. D at 82-91. By letter dated January 10, 2022, DIW informed VNS that the existing License Agreement was set to expire on January 31, 2022, and advised VNS that it was still required to pay DIW the outstanding Recurring Fees

---

[9] Plaintiff includes an itemized statement to show that VNS was in Default. Mallet Aff., Ex. F (the "Itemized Statement") at 106-113. The Itemized Statement shows an invoice date of July 31, 2019. *Id.* at 106. Nevertheless, it appears the first notification to VNS it was in Default was by letter nearly two years later, in July 2021. *See* Mallet Aff., Ex. D.

totaling approximately $145,547.67.  Mallet Aff., Ex. E at 93-104.  To date, Defendants have failed to pay the outstanding fees.

B.     **Procedural Background**

On April 25, 2024, Plaintiff filed the Complaint alleging that Defendants breached the License Agreement, the SynXis Agreement, and the related Guaranty.  Compl.  Khatri was served with the Summons and Complaint on May 16, 2024.[10]  D.E. 8.  Defendants failed to answer or otherwise respond to the Complaint.

Plaintiff then submitted a Request for Entry of Default on August 1, 2024, which the Clerk entered that day.  D.E. 13.  Thereafter, Plaintiff filed this Motion.  Mot.

II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims.  Fed. R. Civ. P. 55.  Although the Court has discretion in granting default judgement, the Third Circuit has emphasized that such discretion is "not without limits" and has repeatedly stated its "preference that cases be disposed of on the merits whenever practicable."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Before granting default judgment, the Court must determine whether: (1) it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendant; (2) the defendant was properly served; (3) the complaint states a sufficient cause of action; and (4) the plaintiff has proven damages.  *Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. 15-4318, 2016 WL 7231598, at *1 (D.N.J. Dec. 14, 2016) (citations omitted).  Additionally, a court must determine the appropriateness of default judgment by considering: (1) prejudice to the plaintiff if

---

[10] Plaintiff's lawyer certifies that the date of service was May 21, 2024.  D.E. 8 at 2.  However, this appears to be the date the server declared that service was effectuated, rather than the date when the Defendant was actually served (May 16, 2024).

the default judgment is denied; (2) whether the defendant has a viable defense; and (3) whether defendant is culpable for its delay. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008)).

III.  ANALYSIS

   A.  The Court Has Subject Matter Jurisdiction and Personal Jurisdiction

Pursuant to 28 U.S.C. § 1331, district courts have original jurisdiction over all cases arising under the Constitution, laws, or treaties of the United States. To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party ascertaining jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business," while "[a] natural person is deemed to be a citizen of the state where he [or she] is domiciled." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

The threshold requirements of subject matter jurisdiction are met in this case. The Court is properly sitting in diversity, as the amount of controversy exceeds $75,000, Compl. ¶ 4, and the parties are domiciled in different states.[11] *See* 28 U.S.C. § 1332.

With respect to personal jurisdiction, "[forum-selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Court has personal jurisdiction over VNS pursuant to the License Agreement, which stipulates "to the non-

---

[11] DIW is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 1. VNS is a California corporation with its principal place of business also in California. *Id.* ¶ 2. Khatri is a citizen of California. *Id.* ¶ 3

5

exclusive personal jurisdiction of and venue . . . the United States District Court for the District of New Jersey." License Agreement at 26. The Court also has personal jurisdiction over Khatri due to the terms of the Guaranty, which binds him to the same jurisdictional stipulation. *See* Guaranty.

    **B.**    **Service Was Proper**

There are four methods for effectuating service in a federal district court: (1) serving the defendant in accordance with the state laws where the district court sits or where service is made; (2) personal service upon the individual; (3) leaving a copy at the individual's dwelling or place of abode with someone of a suitable age who resides there; or (4) delivering the summons and complaint to the party's legal agent. Fed. R. Civ. P. 4(e). Further, under Rule 4(h)(1)(A), a limited liability company may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

Here, service comported with those rules. Service of the Summons and Complaint was effectuated by personal service for both VNS and Khatri in Belmont, California on May 16, 2024. D.E. 8. Since Defendants were personally served pursuant to Fed. R. Civ. P. 4(e)(1), there is sufficient proof of service as to all Defendants.

    **C.**    **Plaintiff Adequately Alleges a Breach of Contract**

Plaintiff alleges a straightforward breach of contract claim. "To state a claim for breach of contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Plaintiff has adequately asserted all four elements. Defendants entered valid contracts with DIW. Compl. ¶¶ 8-19. VNS breached the Licensing Agreement by failing to pay various Recurring Fees, which continued through the expiration of the License Agreement on January 31,

6

2022. *Id.* ¶¶ 21-23. Under the Guaranty, Khatri is obligated to pay outstanding Recurring Fees, but has allegedly failed to perform those obligations. *Id.*; *see* Guaranty; *see also Travelodge Hotels, Inc. v. Huber Hotels, LLC,* No. 19-20571, 2022 WL 44634, at *6 (D.N.J. Jan. 5, 2022) (noting that a guaranty is a contract) (internal citation omitted). Finally, DIW has satisfied all its obligations under the License Agreement. Compl. ¶ 24.

D. **Plaintiff is Entitled to Default Judgment**

Having found that Plaintiff states a valid cause of action against Defendants, the Court next considers whether default judgment is appropriate by making explicit findings regarding the following factors: (1) whether the defendant has a viable defense; (2) whether the plaintiff would suffer prejudice if the default judgment is denied; and (3) whether the defendant is culpable for their delay. *Doug Brady*, 250 F.R.D. at 177 (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). As explained *infra*, the Court finds that all factors weigh in favor of granting default judgment, and that default judgment is thus appropriate.

1. *There is no evidence that Defendants have a meritorious defense*

"[A] defendant has established a meritorious defense when its 'allegations, if established at trial, would constitute a complete defense.'" *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 Fed. App'x 136, 140 (3d Cir. 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). But a defendant must "allege[] specific facts beyond simply denials or conclusory statements." *$55,518.05 in U.S. Currency*, 728 F.2d at 195. "[A] defendant . . . [must] set forth with some specificity the grounds for [its] defense." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988).

Because Defendants failed to respond or answer the Complaint, there is nothing in the record to suggest they have a meritorious defense. *See Trs. of Int'l Union v. Rocon, Inc.*, No. 21-

7

8534, 2022 WL 225384, at *4 (D.N.J. Jan. 26, 2022). Accordingly, this factor weighs in favor of granting default judgment.

        2.     *RWI is prejudiced without default judgment*

For a plaintiff to be prejudiced by a defendant's default, a plaintiff must show that "its ability to pursue the claim has been hindered since the entry of the default judgment." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). But any potential prejudice must "be viewed in the context of [the defendant's] failure over an extended period of time" to cure the default. *Hritz*, 732 F.2d at 1882.

Defendants' time to answer or otherwise respond to the Complaint has expired. *See* D.E. 21-3 ¶ 7; Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants' failure to participate in this case has obstructed RWI's ability to pursue relief, and without a default judgment, RWI has no other means of obtaining redress for the alleged harm. Accordingly, the prejudice factor also weighs in favor of granting default judgment.

        3.     *RWI's conduct is culpable*

For default judgment purposes, culpability does not require intentional and malicious actions on the part of the non-movant, but merely "[r]eckless disregard for repeated communications from plaintiffs and the court." *Hritz*, 732 F.2d at 1183. "[C]ulpable conduct means actions taken willfully or in bad faith, and such bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Gayeman v. Cannon*, No. 14-1518, 2016 WL 6834109, at *2 (E.D. Pa. Nov. 21, 2016); *see also Slover v. Live Universee, Inc.*, No. 8-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is [] presumed culpable where it has failed to answer, move, or otherwise respond.") (citation omitted); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F.App'x


519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability). At the time of this decision, almost a year has passed without an answer. Accordingly, the culpability factor weighs in favor of default judgment.

### E.   Plaintiff is Entitled to Damages

DIW seeks outstanding Recurring Fees in the amount of $153,788.82, inclusive of interest (1.5% monthly). Mot. at 6-7; *see also* Itemized Statement. The Court is satisfied that the Itemized Statement and underlying contracts demonstrate entitlement to that amount.

## IV.   CONCLUSION

For these reasons, the Court will **GRANT** Plaintiff's Motion and will award $153,788.82 in total damages.

Dated: April 8, 2025

*Evelyn Padin*

Evelyn Padin, U.S.D.J.